UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO:

KENNETH EVESSON,

    Plaintiff,
vs.

CARNIVAL CORPORATION and
TABYANA BEACH RESORT d/b/a
TABYANA TOURS,

    Defendants.
_____/

## COMPLAINT

COMES NOW Plaintiff, KENNETH EVESSON, by and through his undersigned attorneys and sues the Defendants, CARNIVAL CORPORATION and TABYANA BEACH RESORT d/b/a TABYANA TOURS, and alleges as follows:

## THE PARTIES

1. The Plaintiff, KENNETH EVESSON, was at all times material an individual and citizen of the state of Texas.

2. That at all times material, the Defendant, CARNIVAL CORPORATION, hereafter referred to as CARNIVAL, is a foreign corporation with its principal place of business in Miami, Florida, and was the owner and/or operator of the cruise ship *CARNIVAL FREEDOM*.

3. That at all times material, the Defendant, TABYANA BEACH RESORT d/b/a TABYANA TOURS, hereafter referred to as TABYANA, is, upon information and belief, a

foreign corporation licensed under the laws of Honduras and does business as a shore excursion operator on behalf of CARNIVAL and other cruise lines.

## JURISDICTION AND VENUE

4. That this is an action involving the diversity of citizenship of the parties as more fully described below and for damages in excess of $75,000.00, that the CARNIVAL ticket contains a forum selection clause in Plaintiff's passenger cruise ticket with the Defendant, CARNIVAL, which calls for all lawsuits to be brought in the Federal Court for the Southern District of Florida.  In the alternative, this case falls within the admiralty jurisdiction of this Court pursuant to 28 U.S.C. §1333.

5. That at all times material, the Defendant, CARNIVAL, was in the business of providing tours which includes the sale of various shore excursions out of the various ports in which it operates, including the Port of Miami, Port Everglades, and Port Canaveral within the State of Florida, as well as various other ports in the United States.  That the Defendant, CARNIVAL, derives substantial income from the sale of shore excursions which it advertises in various markets, including on the internet, to its various customers.

6. That at all material times, a zipline excursion was conducted by the Defendant, TABYANA, and was sold by and on behalf of CARNIVAL to its various passengers, including the Plaintiff in this case.

7. That the Defendant, TABYANA, markets, advertises, and sells its shore excursions, including the zipline, on behalf of CARNIVAL, as well as other cruise lines and derives substantial income as a result of passengers buying said excursions, including the Plaintiff in this case.

8. That at all times material, the Defendants, CARNIVAL and TABYANA, operated and carried on a business and/or business ventures in the State of Florida and was engaged in substantial activity within the State of Florida, operated vessels in the waters of the state, and subject to jurisdiction, pursuant to Florida's long arm Statute, including 48.081, 48.181, and/or 48.193.

9. That upon information and belief, there existed a contract between CARNIVAL and TABYANA for the benefit of CARNIVAL's passengers and in which TABYANA agreed to subject themselves to the laws of the State of Florida and/or General Maritime Law of the United States, and consented to the conferral of personal jurisdiction and venue in this Honorable Court. That such a conferral of personal jurisdiction is proper and permissible pursuant to Florida's Statutes 685.101 and 685.102.

**GENERAL ALLEGATIONS**

10. That on or about September 17th, 2016, the Plaintiff boarded the CARNIVAL cruise ship *FREEDOM* for a one-week cruise.

11. That while onboard the cruise, several days later the Plaintiff purchased a zipline tour to be conducted on behalf of CARNIVAL by the Defendant, TABYANA, at Roatan, in Honduras.

12. That while on the tour, it was discovered that something was wrong with the Plaintiff's equipment and the harness, which was holding him, which had to be removed and replaced. That the Plaintiff continued on the tour, which goes from platform to platform. That the tour assigns a person at each platform to monitor people who are on the tour. When the Plaintiff reached the sixth platform, there was no one there. The Plaintiff could not slow down,

there was no emergency stop, and, as a result, the zipline increased in speed and caused Plaintif to impact a tree.

13. That as a result of the collision, the Plaintiff suffered serious injuries.

14. That the Plaintiff returned to the cruise ship, where he was taken by wheelchair to the infirmary and diagnosed as having a fractured foot. The Plaintiff's foot was so swollen that he could not be casted and was compelled to use crutches and a wheelchair for the duration of the cruise.

15. That as a result of the injuries, the Plaintiff suffered various losses, including medical bills, lost wages, and continues to suffer with the injuries to his foot.

## CAUSES OF ACTION

16. That at all times material, the Defendants were required to use reasonable care under the circumstances for the safety of the Plaintiff.

## COUNT I – NEGLIGENCE AGAINST CARNIVAL

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through sixteen (16) as though fully set forth herein, and further alleges as follows:

17. At all times material, the Defendant, CARNIVAL, owed a duty to its passengers, including Plaintiff, to exercise reasonable care under the circumstances for Plaintiff's safety and to warn of dangers known to CARNIVAL in places where its passengers, including Plaintiff, were invited to or may reasonably be expected to visit.

18. CARNIVAL breached its duty of care to Plaintiff by committing one or more of the following acts and/or omissions, including but not limited to:

   a. Failing to provide a safe excursion;

   b. Failing to provide an excursion with proper equipment and personnel;

c. Failing to properly and adequately inspect, investigate, screen, select and retain the services of its tour operator partner, TABYANA, to ensure TABYANA was operating and running a reasonably safe excursion;

d. Failing to adequately monitor, supervise and audit the ongoing operations of its tour operator partner, TABYANA, to ensure TABYANA was using safe, proper and appropriate equipment, properly trained and competent personnel, and proper and safe procedures to provide a reasonably safe excursion for Plaintiff and cruise passengers;

e. Failing to adequately warn Plaintiff of the dangers that would be encountered during the subject excursion;

f. Operating and/or allowing the excursion to proceed and/or continue under hazardous conditions, which posed an unreasonable risk of injury to Plaintiff;

g. Assuring passengers, including Plaintiff, that all aspects and conditions of the subject excursion were reasonably safe and appropriate for them when in fact they were not;

h. Failing to adequately describe all aspects of the subject excursion to Plaintiff so that he could make an informed decision as to his participation in the subject excursion;

i. Failing to ensure all necessary steps were taken for Plaintiff to safely participate in all aspects of the subject shore excursion;

j. Failing to adequately monitor, supervise and/or inspect its tour operator partner, TABYANA, to ensure that TABYANA employed reasonably safe means for passengers to participate in all aspect of the subject shore excursion;

k. Failing to promulgate, enforce and/or follow adequate policies and procedures for the inspection and monitoring of the subject excursion to ensure proper equipment was used to allow for the reasonably safe participation of all aspects of the subject excursion;

l. Failing to ensure that properly trained and supervised persons operated the subject excursion;

m. Failing to ensure that its tour operator partner, TABYANA, had proper policies and procedures in place to ensure passengers, including Plaintiff, could reasonably safely participate in the subject excursion;

n. Having a shore excursion that was not competently or properly operated;

o. Failing to fulfill its promises to make good on its representations upon which it knew passengers would rely, including the above-described promises and representations made in its literature, website and verbally to Plaintiff,

p. Failing to verify that the subject excursion was safe, reliable, licensed and insured;

q. Failing to implement a method of operation which was reasonable and safe and which would prevent the creation of a dangerous condition, such as the one in this case, and utilizing or allowing negligent methods of operation by its tour operator partner, TABYANA;

r. Failing to promulgate and enforce appropriate safety rules for its tour operator partner, TABYANA;

s. By creating an environment whereby passengers were deceived into believing that they were safe because they have purchased a CARNIVAL excursion ticket as opposed to making its own excursion plans;

t.  By lulling its passengers into a false sense of security regarding the risks of the excursion, the competency of its tour partner and the safety of the excursion by its advertising, marketing and representations;

u.  By failing to properly implement policies and procedures to track prior accidents, incidents or problems, so that the passengers could be properly warned of the danger posed to their health, physical and mental well being by participating in the subject excursion;

v.  By failing to follow its own safety and Quality Manuals (SQM) and/or terms of agreements, contracts, policies and procedures with regard to the subject excursions;

w.  By failing to properly, adequately and competently test and/or audit the horses and equipment used on the subject excursion;

x.  By failing to mandate and enforce that the employees and/or agents involved in the excursion comply with the CARNIVAL's policies and procedures relating to the health and safety of its cruise ship passengers;

y.  By failing to mandate and enforce that its excursion partner, TABYANA, maintain properly trained horses and/or qualified and competent personnel to perform its excursions, including the subject excursion;

z.  Having a shore excursion that was not competently operated; and/or

aa. In other manners not yet known, but which will be uncovered in discovery.

19.  At all material times, CARNIVAL failed to determine the hazards that the subject excursion posed to Plaintiff, failed to eliminate hazards, failed to modify the hazards and/or failed

to properly warn Plaintiff of the hazards. All of the above directly and proximately caused Plaintiff to be catastrophically injured as described above.

20. CARNIVAL knew of the foregoing conditions causing Plaintiff's accident and did not correct them, or the conditions existed for a sufficient length of time so that CARNIVAL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

21. As a direct and proximate result of the aforesaid negligence, Plaintiff has suffered and continues to suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of past earnings, loss of ability to earn money and aggravation of a known or unknown previously existing condition.  The losses are either permanent or continuing in nature and Plaintiff will continue to suffer the losses in the future.

## COUNT II– NEGLIGENCE AGAINST CARNIVAL
## (APPARENT AGENCY OR AGENCY BY ESTOPPEL THEORY)

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through sixteen (16) as though fully set forth herein, and further alleges as follows:

22. CARNIVAL held out the owners and/or operators of the "zipline" excursion as its apparent agent. CARNIVAL represented to its cruise passengers, including but not limited to Plaintiff, that the operator of the "zipline" excursion was acting for the benefit of CARNIVAL. Included among these representations, were the following:

   a. From the moment that Plaintiff purchased his cruise ticket, CARNIVAL bombarded its passengers with a series of internet, brochures and other media, all of which advertise the availability and safety of various CARNIVAL excursions, which were presented as an integral part of the "cruise ship experience." These

  excursions were marketed as excursions which were not independent of CARNIVAL, and which were distinguished from other, allegedly less safe excursions, which were not CARNIVAL excursions;

b. CARNIVAL marketed the subject excursion on its website by guaranteeing the best price and offering a 110% of the price difference for a better price for any excursion "we offer"; and/or

c. CARNIVAL maintained a shore excursion desk manned by crew members on FREEDOM which promoted, advertised, explained, coordinated and supervised its excursions, including the subject "zipline" excursion;

d. TABYANA was not identified as the owner/operator of the "zipline" excursion at any time when it was being marketed by CARNIVAL and purchased by its passengers, including Plaintiff herein;

e. The excursions, including the subject "zipline" excursion, were paid for by passengers by charging them to the passengers' onboard account or through the passenger's account maintained with the cruise line website;

f. CARNIVAL required that TABYANA's personnel on the pier have and hold up a sign for CARNIVAL passengers, while cruise personnel were stationed at the foot of the pier and directed passengers toward the busses.

23. At all material times, CARNIVAL is estopped from denying that TABYANA was its agent or employee.

24. CARNIVAL is therefore legally responsible for the foregoing acts of negligence of TABYANA set forth in Count III, including all subparts, which were a direct and proximate cause of the injuries of Plaintiff.

25. As a direct and proximate result of the aforementioned carelessness and negligence of CARNIVAL, Plaintiff sustained the serious, catastrophic and permanent injuries and damages set forth in paragraphs 45-51 above.

26. As a direct and proximate result of the aforesaid negligence, Plaintiff has suffered and continues to suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of past earnings, loss of ability to earn money and aggravation of a known or unknown previously existing condition.  The losses are either permanent or continuing in nature and Plaintiff will continue to suffer the losses in the future.

## COUNT III:  NEGLIGENCE AGAINST TABYANA

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through sixteen (16) as though fully set forth herein, and further alleges as follows:

27. That the Defendant TABYANA breached the duty of care which it owed to the Plaintiff and was negligent in one or more of the following manner:

   a. TABYANA negligently failed to provide the Plaintiff with the proper equipment;

   b. TABYANA negligently failed to conduct, monitor, and otherwise control the zipline tour for the safety of the Plaintiff;

   c. That TABYANA was on notice that it did not have a safety monitor at one of its stations for purposes of controlling the Plaintiff's zipline, which resulted in the Plaintiff impacting with a tree, causing serious injuries.

28. That as a direct and proximate result of the negligence of the Defendant, TABYANA, the Plaintiff sustained severe injuries to his body and extremities, pain and suffering, disability, disfigurement, aggravation of pre-existing conditions, inconvenience, scarring, the loss of capacity for the enjoyment of life, loss of past earnings, impairment of his future earning capacity and has incurred medical, nursing, rehabilitation and hospital expenses in the past and will continue to incur such expenses in the future. All of said damages and injuries are permanent and continuing in nature.

## COUNT IV – THIRD PARTY BENEFICIARY BREACH OF CONTRACT AGAINST TABYANA

Plaintiff readopts and realleges each and every allegation contained in paragraphs one (1) through sixteen (16) as though fully set forth herein, and further alleges as follows:

29. CARNIVAL and TABYANA entered into a contract to which the Plaintiff was not a party, in which TABYANA agreed to provide various excursions including the "zipline" excursion for CARNIVAL's passengers.

30. The contract imposes various obligations upon TABYANA and CARNIVAL which are clearly or manifestly intended for the primary and/or direct benefit of CARNIVAL passengers (called "Guests," "Excursion Guests" or "Carnival Guests" throughout the contract), including Plaintiff. The Contract mentions "Guests" or "Excursion Guests" a total of 21 times in 3 pages! The term "Guest" is capitalized throughout the Contract. Thus, the Contract refers to a "well-defined class of readily identifiable persons" that it intends to benefit. *See Polo Ralph Lauren L.P. v. Tropical Shipping & Const. Co.*, 215 F.3d 1217, 1222 (11th Cir. 2000); *Belik v. Carlson Travel Group, Inc.*, 864 F.Supp.2d 1302, 1312 (S.D. Fla. 2011).

31. Under Section (1) of the "TERMS AND CONDITIONS" provision of the "STANDARD SHORE EXCURSION AND INDEPENDENT CONTRACTOR AGREEMENT"

(the "Contract"), the Contract identifies 20 CARNIVAL vessels for which "CARNIVAL will provide the following vessels identified below for the sale of shore excursions to its Guests".

32.The Contract also provides, under "Purpose of Agreement" that "CARNIVAL is in the business of providing cruise vacations" and that "OPERATOR is an independent contractor in the business of arranging and providing shore excursions and is willing to provide shore excursions to Guests on the vessels." Pursuant to the Contract "CARNIVAL agrees to sell tickets for Shore Excursions to Vessel Guests and OPERATOR agrees to arrange and provide Shore Excursions" for those guests.

33.Under Section (4) entitled "Advertising and Sale of Shore Excursions", "CARNIVAL agrees to advertise and sell to Guests on the Vessels the Shore Excursions . . . CARNIVAL may charge its Guests such prices as it determines in its sole discretion . . . Carnival shall collect all proceeds directly from its guests." Accordingly, the Contract provides that "(t)hose Guests purchasing tickets for a Shore Excursion are herein referred to as "Excursion Guests."

34.Under Section (5) TABYANA agrees to "arrange and provide the Shore Excursions to the Excursion Guests."

35.Under that same provision, TABYANA "acknowledges and represents that it will exercise reasonable care for Excursion Guests' safety at all times."

36.TABYANA is prohibited from soliciting or making any prior arrangements with future CARNIVAL Guests.

37.Pursuant to the Contract, TABYANA "is responsible for procuring and maintaining liability insurance against any and all injuries, whether personal or otherwise, to Guests. . . ."

38.Accordingly, the Contract identifies all Excursion Guests as creditor third party beneficiaries of the agreement. The agreement is meaningless and would not exist without the

Guests' purchase of TABYANA's excursion experience directly from CARNIVAL. The only funds exchanged between the parties to the Contract are funds provided directly from the Excursion Guests which are, by definition, passengers on CARNIVAL's vessels. Thus, the entire Contract, as well as pre and post Contract conduct of the parties to the Contract is focused upon the Excursion/CARNIVAL Guests. Thus, the Contract expresses the intent of both CARNIVAL and TABYANA to primarily and directly benefit a class of persons (CARNIVAL Guests or Excursion Guests) of which the Plaintiff is a member.[1]

39. These references include but are not limited to insurance, safety and service standard obligations,[2] inspection rights and requirements, obligations to suspend excursion operations that do not comply with the safety and service obligations, as well as the obligation to agree to jurisdiction for any litigation instituted by CARNIVAL's passengers against it for breach of the obligations which are owed under the contract(s) or any other rules, regulation and standards promulgated by CARNIVAL.

40. TABYANA breached the contract(s) by failing to comply with its safety and service standard obligations imposed by CARNIVAL as described in detail in Count II, which is incorporated herein by reference. Thus, Plaintiff has alleged breach of the contract by one of the parties.

41. CARNIVAL breached the subject contract(s) by failing to comply with its obligations to make sure that TABYANA complied with its safety and service standard obligations, and suspend excursion operations that do not comply with the safety and service

---

[1] Under Federal Rule of Civil Procedure 9(b), "intent . . . and other conditions of a person's mind may be alleged generally." *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338 (11th Cir. 2015).
[2] The contract requires TABYANA to exercise reasonable care for CARNIVAL's guests' safety at all time, and thus imposes a duty of care and negligence standard on the Defendants.

obligations, in connection with the operation of the subject excursion as set forth in more detail in Count I hereto, which is incorporated herein by reference.

42. The above-described obligations under the contract(s), and the various standards and obligations incorporated into it by reference, were clearly or manifestly intended for the primary and/or direct benefit and safety of the passengers of CARNIVAL, including Plaintiff.

43. As a direct and proximate result of the aforementioned breach of contract by TABYANA and/or CARNIVAL, Plaintiff sustained the serious, catastrophic and permanent injuries and damages set forth herein.

44. As a direct and proximate result of the aforesaid breaches of contract by one or more of the Defendant/Contracting Parties, Plaintiff has suffered and continues to suffer bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of past earnings, loss of ability to earn money and aggravation of a known or unknown previously existing condition.  The losses are either permanent or continuing in nature and Plaintiff will continue to suffer the losses in the future.

## **PRAYER FOR RELIEF AS TO ALL COUNTS**

WHEREFORE, Plaintiff demands judgment for damages against the Defendants CARNIVAL and TABYANA for all compensatory damages allowable under the law, together with costs, for prejudgment interest, for trial by jury and any other relief deemed just and appropriate by this Honorable Court.

DATED:  September 20, 2017

Respectfully submitted,

WAKS & BARNETT, P.A.
Attorneys for Plaintiff(s)
9900 SW 107th Ave., #101
Miami, FL 33176
Tel: (305) 271-8282
Fax: (305) 595-9776


By: */s/ Andrew L. Waks*
     ANDREW L. WAKS
     FBN: 241350